UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                                                         :
In re:                                                   :
                                                         :   Chapter 11
CORT & MEDAS ASSOCIATES, LLC,                            :   Case No.: 19-41313 (CEC)
                                                         :
                                     Debtor.             :
-------------------------------------------------------- X
                                                         :
1414 UTICA AVENUE LENDER LLC,                            :   **MEMORANDUM DECISION AND**
                                                         :   **ORDER**
                                     Appellant,          :
                  - against -                            :
                                                         :   20-cv-3971 (BMC)
EMPIRE STATE CERTIFIED                                   :
DEVELOPMENT CORPORATION,                                 :
                                                         :
                                     Appellee.           :
                                                         :
-------------------------------------------------------- X

**COGAN, District Judge.**

    This appeal from the bankruptcy court reflects a contest over lien priority between two mortgagees of the debtor's real property.  The issue arises because an intercreditor agreement between the mortgagees subordinated amounts due under one mortgage (the "CDC mortgage") to all amounts due under the other mortgage (the "PAB mortgage") – *except* for default charges. As to default charges owed on the PAB mortgage, the CDC mortgage had priority.  Nevertheless, a state court foreclosure judgment obtained before the mortgagor's bankruptcy filing, in contravention of the intercreditor agreement, awarded a first priority to all amounts due under the PAB mortgage – *including* default charges.

    The bankruptcy court declined to recognize the state court judgment.  It rejected the argument of the current holder of the PAB mortgage, appellant 1414 Utica Avenue Lender LLC

("1414"), that the doctrines of *res judicata* and *Rooker-Feldman* prevented CDC from asserting a priority to the amount of the default charges.

As to *res judicata*, I disagree.  CDC and its predecessor had full notice and an opportunity to be heard in state court when 1414 and its predecessor made it clear that they were seeking to include default charges in their priority, notwithstanding anything to the contrary in the intercreditor agreement.  But CDC's predecessor, although named as a defendant and appearing in the foreclosure action, did not answer the plaintiff's foreclosure complaint to deny the plaintiff's claim of priority for all amounts due under the PAB mortgage.  Nor did CDC or its predecessor object to the plaintiff's motion for summary judgment.  In addition, CDC did not object to the form of judgment which the plaintiff submitted.  It did not object to the referee's report which prioritized the default charges in favor of the plaintiff.  And when the judgment was entered, CDC did not seek reargument or appeal.

*Res judicata* prevents CDC from asserting claims in the Debtor's bankruptcy case that it failed to assert in state court.  The decision of the bankruptcy court is therefore REVERSED.[1]

---

[1] Because of my disposition of the *res judicata* issue, I need not reach 1414's argument regarding *Rooker-Feldman*. I recognize that many courts, including the Supreme Court and the Second Circuit, have referred to *Rooker-Feldman* as a "jurisdictional" bar.  See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291 (2005); Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005).  If so interpreted, then arguably I would need to dispose of that issue first, as federal courts should resolve issues concerning their subject matter jurisdiction before they reach the merits of a case.  See Lance v. Coffman, 549 U.S. 437, 439 (2007).

However, I think the more modern view is to recognize that federal courts have jurisdiction over federal questions – in this case, bankruptcy jurisdiction under 28 U.S.C. § 1334 – and other impediments to federal review present deficiencies in the claim, not in the court's subject matter jurisdiction.  See, e.g., Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 439 (2011); Arbaugh v. Y&H Corp., 546 U.S. 500 (2006); United States v. Prado, 933 F.3d 121, 135 (2d Cir. 2019).  The Second Circuit has recently approved this approach, explaining that a court has discretion to decline to resolve such jurisdictional issues before reaching the merits so long as the court is satisfied that it has Article III jurisdiction.  Miller v. Metro. Life Ins. Co., 979 F.3d 118, 123 (2d Cir. 2020).  Because the Rooker-Feldman doctrine "does not implicate Article III jurisdiction," I thus exercise my discretion to dispose of the *res judicata* issue without first resolving the "arguably complex" *Rooker-Feldman* analysis.  Butcher v. Wendt, 975 F.3d 236, 244 (2d Cir. 2020).

## BACKGROUND

### I.  The Loan Documents

In 2009, the debtor Cort & Medias Associates, LLC (the "Debtor") issued two promissory notes and granted two mortgages to obtain financing for the development of a commercial parcel in Brooklyn.  One loan was from appellee Empire State Certified Development Corporation ("CDC") for $1,132,000, secured by a mortgage, and guaranteed by the United States Small Business Administration ("SBA").[2]  Upon closing, CDC assigned its rights under the loan and mortgage to the SBA.

At the same time, the Debtor received a $1,375,000 five-year term loan from the Park Avenue Bank ("PAB"), secured by a separate mortgage.

To establish priorities between the two mortgagees, CDC and PAB entered into an intercreditor agreement at the same time that the loans were extended, referred to as the "Third Party Lender Agreement."  By its terms, the agreement was binding on any successors or assignees of CDC or PAB.  The agreement recited that the CDC loan and mortgage would be subordinate to the PAB loan and mortgage.  Specifically, the intercreditor agreement stated that "the interest held by CDC (CDC Lien) will be junior and subordinate to the lien or security interest" held by PAB.

There was, however, one relevant carve-out to that subordination provision.  The intercreditor agreement further provided that as to any "Default Charges" owed on the PAB loan, PAB's loan and mortgage lien "is and will be subordinate to the [CDC loan] and the CDC Lien."  "Default Charges" were defined to include "late fees, other default charges, and escalated interest after default" on the PAB loan.  In other words, the PAB mortgage always had priority over the CDC mortgage, except for the payment of Default Charges, as to which the CDC

---

[2] The Debtor's principal also guaranteed the loan and mortgage, but that is not material on this appeal.

mortgage had priority.  There is no dispute in this case that the Default Charges under the PAB

loan and mortgage that are at issue in this case – in the amount of $571,099.74 – fall within the

definition of Default Charges.

## II.  The State Court Foreclosure Action

The PAB loan matured and went into default in 2015.  By that time, PAB had fallen

under FDIC receivership, and the FDIC had assigned the loan and mortgage to a subsidiary of

Valley National Bank ("VNB").  VNB, as agent for its subsidiary, commenced a foreclosure

action in New York State Supreme Court, Kings County, naming the SBA and other lienholders

as defendants.  The foreclosure complaint referenced and annexed the intercreditor agreement,

alleging: "[T]he CDC Mortgage on the Mortgaged Premises and Chattel was subordinated to"

the PAB mortgage.  It specifically recited the existence of the intercreditor agreement and its

interpretation of that agreement:

> 26.  In conjunction with the Valley National Mortgage and the CDC Mortgage, as
> of December 29, 2009, The Park Avenue Bank and CDC entered into a Third
> Party Lender Agreement, *whereby the CDC Mortgage on the Mortgaged
> Premises and Chattel was subordinated to the Valley National Mortgage*.  The
> Third Party Lender Agreement was recorded on January 13, 2010, in the City
> Register's Office, CRFN: 2010000013624. A true and correct copy of the Third
> Party Lender Agreement, together with the City Register's Office Recording and
> Endorsement Cover Page, is annexed hereto as Exhibit H and made a part hereof.

(Emphasis added).  The "wherefore" clause of the complaint included a request that the SBA

and all the other named interest holders "be barred and forever foreclosed of all right, title,

interest, claim, lien and/or equity of redemption in and to the mortgaged premises."  The SBA,

by the U.S. Attorney for the Eastern District of New York, was served in 2015, and filed a notice

of appearance in the foreclosure action, but did not answer or otherwise dispute VNB's right to

foreclose the CDC mortgage on the terms requested.

4

The Debtor answered the complaint and hotly contested the foreclosure action. The SBA did not. VNB moved concurrently for summary judgment against those defendants who had answered or appeared and default judgment against those defendants who had not, and the state court granted the motion in September 2016. This motion is not in the record but two things that are clear by reference to other documents are: (1) VNB asserted that its mortgage had priority over the CDC mortgage, without qualification; and (2) the SBA did not file anything disputing that. The court appointed a referee to report on the priorities and distribution of proceeds from the contemplated sale, which the referee did in February 2017. Again, the referee's report is only referenced in the record, not included, but there is no dispute that it prioritized all amounts due under the PAB mortgage without qualification, and the SBA did not object to the report.

1414 acquired the interest in the loan, mortgage, and foreclosure action from VNB in April 2017. The following September (2017), on notice to all parties, including the SBA, the state court entered a Judgment of Foreclosure and Sale (the "Foreclosure Judgment"), substituting 1414 as plaintiff. The Foreclosure Judgment noted that the SBA had appeared (but not answered). The Foreclosure Judgment stated, among other things, that it was

> ORDERED, ADJUDGED AND DECREED, that each and all of the defendants in this action, and all persons claiming under any of them after the filing of such Notice of Pendency of this action, be and they are hereby forever barred and foreclosed of all right, claim, lien, title, interest and equity of redemption in the said mortgaged premises and chattel and each and every part thereof[.]

The Foreclosure Judgment also computed the amounts due to 1414 under the mortgage, and that computation included the Default Charges:

> that the report of [the] referee … is modified in part to reflect that the amount due and owing to Plaintiff under the Note and Mortgage as of January 1, 2017, is $1,865,216.29 with interest continuing to accrue thereon through the date of entry of judgment at a *per diem* rate of $824.33, calculated as follows: (a) outstanding principal balance of $1,263,490.19; (b) Note Rate Interest of $13,021.04; (c)

*Default Rate Interest of $571,099.74*; and (d) Negative Escrow of $17,605.32[.]

(Emphasis Added).[3]  Finally, the Foreclosure Judgment directed the referee, upon sale of the

property, to give the PAB mortgage the highest priority after fees and taxes, specifically,

directing her to pay 1414 "the sum of $1,865,216.29, the said amount so reported due" on the

PAB mortgage, which, as reflected above, included the $571,099.74 in Default Charges.  The

SBA did not object to the proposed form of the Foreclosure Judgment prior to the state court

entering it.  After entry of the judgment, the SBA did not seek reargument nor did it appeal.

At some point thereafter which is not clear from the record, the SBA "put" the CDC loan

and mortgage back to CDC, presumably pursuant to a contractual arrangement between them

based on the foreclosure or the Debtor's bankruptcy.  After lengthy but unsuccessful negotiations

between 1414 and the Debtor,[4] the property was scheduled for sale on March 7, 2019, about 18

months after entry of the Foreclosure Judgment.

### III.   The Bankruptcy Case

On March 6, 2019, the day before the foreclosure sale, the Debtor filed a petition for

relief under Chapter 11 of the Bankruptcy Code, thus staying the foreclosure sale under 11

U.S.C. § 362(a).  In the Chapter 11 case, 1414 timely field a secured claim for the full amount

due on the PAB mortgage, which included the Default Charges of $571,099.74.  CDC also filed

a secured claim for all amounts due under its mortgage.

1414 and the Debtor filed competing Chapter 11 plans of reorganization, the former of

which prioritized the Default Charges in favor of 1414 and the latter of which prioritized those

charges in favor of CDC, relegating 1414's claim for Default Charges to unsecured status.  After

---

[3] Neither party has told me what modification was made to the referee's report.  I therefore assume it was not material; it probably brought the interest calculation current to the date of the Foreclosure Judgment.

[4] 1414 asserts in its brief that neither the SBA nor the CDC participated in those negotiations.  CDC has not disputed that, but there is nothing to support it in the record.

a hearing, the Debtor filed an amended plan that contained alternative priorities of distribution depending on how the bankruptcy court ultimately resolved the issue as to the Default Charges.

On May 12, 2020, 1414 filed a motion to have the bankruptcy court determine, based on the Foreclosure Judgment, that its claim for Default Charges was secured as part of its mortgage and that any claims by CDC or other creditors were subordinate to that claim.  CDC objected, asserting its priority over the Default Charges pursuant to the intercreditor agreement.

Following a hearing on June 24, 2020, the bankruptcy court denied 1414's priority motion, finding that the Default Charges did not have priority in favor of 1414 over CDC's claim.  The court's oral ruling explained that the Foreclosure Judgment had not "explicitly" dealt with the priority issue as to Default Charges, and that nothing in the pleadings and motions leading to the Foreclosure Judgment had "either explicitly or implicitly" required the SBA to dispute the priority of the Default Charges in favor of 1414 during the foreclosure proceeding. The Bankruptcy Court entered an order consistent with this ruling, from which this appeal is taken, on August 10, 2020.

## DISCUSSION

I have jurisdiction over this appeal under 28 U.S.C. § 158(a)(1) as it arises from the bankruptcy court's final order completely disposing of the matter under review.  See In re Premier Operations, 290 B.R. 33, 37 (S.D.N.Y. 2003); see generally In re Quigley Co., Inc., 676 F.3d 45 (2d Cir. 2012).

The application of either *res judicata* or *Rooker-Feldman* to undisputed facts presents a question of law that is reviewed *de novo*.  See Brown Media Corp. v. K&L Gates, LLP, 854 F.3d 150, 157 (2d Cir. 2017) (*res judicata*); Hoblock v. Albany Cty. Bd. of Elections, 422 F.3d 77, 83 (2d Cir. 2005) (*Rooker-Feldman*); In re Carroll, 332 B.R. 514, 517 (D. Conn. 2005) (*Rooker-*

*Feldman*).  Both doctrines are fully applicable to proceedings in bankruptcy court.  See
Swiatkowski v. Citibank, 446 F. App'x 360, 361 (2d Cir. 2011) (*Rooker-Feldman*); EDP Med.
Comput. Sys., Inc. v. United States, 480 F.3d 621, 624 (2d Cir. 2007) (*res judicata*); In re
Residential Cap., LLC, No. 12-12020, 2014 WL 3057111, at *12 (Bankr. S.D.N.Y. July 7, 2014)
("When the elements for *res judicata* are satisfied, bankruptcy courts may look behind a state
court judgment only where the judgment was obtained by fraud or collusion, or where the state
court lacked jurisdiction.").

The Full Faith and Credit Act requires federal courts to give the same preclusive effect to
a state court judgment as that judgment would receive in a state court: "[J]udicial proceedings
. . . shall have the same full faith and credit in every court within the United States . . . as they
have by law or usage in the courts of such State . . . from which they are taken."  28 U.S.C. §
1738.  See Matsushita Elec. Indus. Co., Ltd. v. Epstein, 516 U.S. 367, 373 (1996) ("Federal
courts may not employ their own rules in determining the effect of state judgments, but must
accept the rules chosen by the State from which the judgment is taken." (cleaned up)).  I will
therefore look to New York law to determine the effect of the Foreclosure Judgment.[5]

"Under New York law, the doctrine of claim preclusion [or *res judicata*] bars litigation
of claims or defenses that were or could have been raised in a prior proceeding where that prior
proceeding resulted in a final judgment on the merits and arose out of the same factual grouping
as the later claim, even where the later claim is based on different legal theories or seeks
dissimilar or additional relief."  L.A.M. Recovery, Inc. v. Dep't of Consumer Affs., 345 F. Supp.
2d 405, 409-10 (S.D.N.Y. 2004); see also Hinds v. Option One Mortg. Corp., No. 11-CV-6149,
2012 WL 6827477, at *5 (E.D.N.Y. Dec. 6, 2012) ("New York has adopted a transactional

---

[5] Although there are some differences in the application of *res judicata* between New York and federal judgments,
see Winters v. Lavine, 574 F.2d 46, 55-57 (2d Cir. 1978), none of those differences are material here.

approach to *res judicata*, barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." (quotation marks omitted)), underlined adopted at, 2013 WL 132719 (E.D.N.Y. Jan. 10, 2013).  Thus, under New York law, *res judicata* will preclude a claim from being raised where (1) the previous action involved an adjudication on the merits; (2) the previous action involved the parties in the subsequent action or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.  Pike v. Freeman, 266 F.3d 78, 91 (2d Cir. 2001).

It is well settled that New York's transactional approach to *res judicata* "also applies to defenses that could have been litigated in a foreclosure action."  Hinds, 2012 WL 6827477, at *5 (quoting Beckford v. Citibank N.A., No. 00-CV-205, 2000 WL 1585684, at *3 (S.D.N.Y. Oct. 24, 2000)).  Thus, a "[f]oreclosure [j]udgment is final as to all questions at issue between . . . parties, and concludes all matters of defense that were or might have been litigated in the [f]oreclosure [a]ction."  Hourani v. Wells Fargo Bank, N.A., 158 F. Supp. 3d 142, 147 (E.D.N.Y. 2016); see also Drew v. Chase Manhattan Bank, N.A., No. 95-cv-3133, 1998 WL 430549, at *6-7 (S.D.N.Y. July 30, 1998) ("Under New York law[,] '[a state court] judgment of foreclosure and sale entered against a defendant is final as to all questions at issue between the parties, and all matters of defense which were or might have been litigated in the foreclosure action are concluded.'" (quoting Gray v. Bankers Tr. Co., 82 A.D.2d 168, 170-71, 442 N.Y.S.2d 610, 612 (3rd Dep't 1981))).

It is important to note that this preclusion applies even where "the judgment may have been wrong or rested on a legal principle subsequently overruled in another case."  Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981).  Although that may result in legally

incorrect results from time to time, the common law nevertheless favors *res judicata* even in those situations because overall it "protects against the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." In re Aiolova, 496 B.R. 123, 130 (Bankr. S.D.N.Y. 2013) (quotation marks omitted).

Under the factors set forth above, *res judicata* bars CDC's claim that the Default Charges should be subordinated. First, the Foreclosure Judgment was a determination on the merits concerning priority. It resolved any question by giving 1414 a first priority on all amounts due under the PAB mortgage, including the Default Charges. Second, the foreclosure action was between the same parties as are contesting this case or, at least, their assignors, who are by definition in privity with the parties here. See Taylor v. Sturgell, 553 U.S. 880, 894 (2008). Third, the SBA had multiple opportunities to raise its claim that the Default Charges were subordinated to the CDC mortgage lien – in an answer to the complaint; in opposition to VNB's motion for summary judgment; in an objection to the referee's report; in an objection to the form of the Foreclosure Judgment; or by reargument or appeal – but it chose not to raise the point at all.

The bankruptcy court's holding that *res judicata* did not apply because lien priority was not "expressly or implicitly" raised in the foreclosure judgment is misplaced for at least two reasons. First, I think the issue is most fairly viewed as expressly raised, and even if it wasn't, the issue was certainly implicitly raised. When the foreclosure complaint alleged that "[t]he CDC Mortgage on the Mortgaged Premises and Chattel was subordinated to" the PAB mortgage, without qualification or limitation, that covered the waterfront. Moreover, the Foreclosure Judgment set forth a precise priority of distribution, expressly elevating the Default Charges over

any adverse claim by CDC.  And when the court adopted language providing that "each and all of the defendants in this action  . . . be and they are hereby forever barred and foreclosed of all right, claim, lien, title, interest and equity of redemption in the said mortgaged premises," that clearly extinguished or at least subordinated any lien or claim by CDC to the entirety of 1414's claim under the PAB mortgage.  See In re Parade Place, 508 B.R. 863, 872 (Bank. S.D.N.Y. 2014) (*res judicata* barred claim of tenant who had been named in foreclosure action, even though the tenancy should have likely survived foreclosure, where tenant appeared in the foreclosure action but did not assert its interest, and foreclosure judgment stated that all defendants were "forever barred and foreclosed of all right, claim, lien, title, interest and equity of redemption in" the property).

Perhaps more importantly, the bankruptcy court's requirement that the issue concerning Default Charges be "expressly or implicitly" raised appears to have confused *res judicata* with another preclusion doctrine – collateral estoppel.  The latter requires actual litigation and resolution of the issue in question.  See Winters v. Lavine, 574 F.2d 46, 57 (2d Cir. 1978).  But, as noted above, *res judicata* applies not only to claims that were actually raised, but to claims that could have been raised as arising out of the same transaction.  Since it is one of the fundamental purposes of foreclosure procedure to establish priority of distribution of sales proceeds between interest holders (including lienholders), cf. Sanders v. Palmer, 68 N.Y.2d 180, 185, 507 N.Y.S.2d 844 (1986) ("[L]eave to bring a separate action would not be granted as to a party who could have been made a defendant in the foreclosure action unless special circumstances were shown which manifestly required that course." (quotation marks and citation omitted)), this was clearly an issue that the SBA, as predecessor in interest to CDC, could and should have raised.  Indeed, "it has long been the law that default judgments can support *res*

11

*judicata* as surely as judgments on the merits," EDP Med. Comput. Sys., 480 F.3d at 626;

accord, Dupps v Betancourt, 121 A.D.3d 746, 994 N.Y.S.2d 633 (2nd Dep't 2014), and I see no

reason why a defaulted claim is any less preclusive than a default in appearance.

      CDC's arguments to the contrary are not persuasive.  It first suggests that 1414 is being

unfairly opportunistic by taking advantage of SBA's failure to seek subordination of the Default

Charges in the foreclosure action.  1414's opportunism is not lost on me, but I see its conduct as

no more opportunistic, and no more unfair, than CDC's efforts to resurrect, by reason of the

Debtor's fortuitous Chapter 11 filing, a position that the SBA clearly forfeited in the foreclosure

action.  If there is any unfair conduct here, which I do not think there is, the parties would be *in

pari delicto*.

      CDC's closely related argument is that if 1414 wanted to elevate the Default Charges to a

level higher than provided in the intercreditor agreement, it was obligated to expressly "flag" that

issue for the state court to determine.  That contention is driven, perhaps understandably, by the

fact that, even at this late stage, 1414 cannot point to anything in the intercreditor agreement that

would permit the result it has obtained.  But I think CDC's contention reverses the respective

burdens on 1414 (and VNB) and CDC (and the SBA) in the foreclosure action, and in doing so,

again misconstrues *res judicata*.  It was not incumbent on VNB or 1414 to bring the carve-out

for Default Charges to the state court's attention.  VNB alleged as a general matter, accurately,

that its mortgage was superior to CDC's.  If there was an exception to that allegation (which

there was), it was the SBA's job to protect its own interest.

      Indeed, VNB and 1414 practically gave the SBA an engraved invitation to do so.  They

not only expressly sought priority of the entire amount due on the PAB mortgage in every

document filed, but they also annexed a copy of the intercreditor agreement to the foreclosure

complaint and the motion for summary judgment.  That reference immediately followed the allegation that under the intercreditor agreement, the PAB mortgage was paramount.  Thus, the carve-out was not hidden from the state court or the SBA; rather, the SBA just did not regard it as having any importance, and neither did CDC until the Debtor filed for bankruptcy.  But the relief requested in VNB's complaint and summary judgment motion, referee's report, and the Foreclosure Judgment were no less clear than the carve-out in the intercreditor agreement.  VNB and 1414 sought the highest priority (after taxes and fees) of all amounts owed under the PAB mortgage.

The only other argument that CDC raises is that under New York law, senior mortgagees are not "necessary" parties to a foreclosure sale.  Its argument apparently is that since VNB did not have to, or was not allowed to, name it as a defendant with regard to the Default Charges, the Default Charges could not be brought into issue by VNB.

It is true that CDC was not a "necessary" party as to the Default Charges, but that is immaterial.  If VNB wanted to assert priority as to all charges under the PAB mortgage, it certainly had the right to name CDC to achieve that goal.  When one lienholder wants to extinguish or fix the interest of another lienholder, whether junior or senior, the first lienholder is perfectly able to do that under New York foreclosure practice.

This is shown by the First Department's decision in <u>King v. Franmor Equity Corporation</u>, 260 A.D. 303, 20 N.Y.S.2d 909 (1st Dep't 1940), where the court held that an ostensibly senior lienholder could be joined in a foreclosure action for the purpose of determining its lien.  The court rejected the almost identical argument that CDC raises here:

> The plaintiffs' contention that, as a prior lien, the trust mortgage could not have been cut off in the foreclosure unless provision had been made for a determination of the amount of the trustee's claim and payment thereof from the proceeds of the sale is, in the circumstances, without merit. . . .

> "If a plaintiff in any foreclosure action chooses to make a person who claims that
> he holds a lien upon or interest in the property sought to be foreclosed that is prior
> and superior to the claim of the plaintiff, a party defendant, either for the purpose
> of determining the amount of the claim and paying it from the proceeds of sale or
> of having the same declared to be subject and subordinate to his lien, such claim
> should be clearly stated in the complaint. When a plaintiff so clearly states his
> claim in a complaint[,] the defendant must appear in the action and present his
> claim by appropriate pleading or pleadings, and if necessary by proof or suffer the
> ordinary consequences of a default."
>
> It thus appears that a prior lien may be cut off in a foreclosure action, where a
> prior lienor is made a party defendant for either of the following purposes: (1) To
> determine the amount of his claim and to pay it from the proceeds of sale, or (2)
> to have the claim declared to be subject and subordinate to plaintiff's lien.

Id. at 306-07, 20 N.Y.S.2d at 912-13 (citation omitted).  The court therefore held that because the

prior mortgagee had not asserted its paramount interest in the foreclosure action, "[t]he judgment

rendered therein is res adjudicata as to such issue," id. at 307, 20 N.Y.S.2d at 913, and the

foreclosed mortgagee could not bring a new action to assert his priority.

The relief sought in King was the usual relief sought in foreclosure actions, nearly

identical to the relief sought by VNB here – "that all defendants and every person claiming

through, from or under them, be barred and foreclosed of all right, title, claim and equity of

redemption in the mortgaged premises."  Id. at 305, 20 N.Y.S.2d at 911.  And like the

foreclosing mortgagee in King, VNB's complaint expressly referenced and annexed the

intercreditor agreement that gave rise to CDC's claim for priority for the Default Charges.  VNB

did not have to integrate a pop-up greeting card on the allegation in the complaint that the PAB

mortgage was superior; the allegation in the complaint of superiority of all amounts due, the

citation and annexation of the intercreditor agreement, and the request for relief gave the SBA all

of the notice of the issue to which it was entitled.

The New York authorities cited by CDC are not to the contrary.  They cite the general

rule that a foreclosing mortgagee need only join junior lienholders, but nothing in them precludes

14

the foreclosing mortgagee from joining a purportedly senior mortgagee for the purpose of

ascertaining or subordinating its interest.  Indeed, CDC's citation to Jacobie v. Mickle, 144 N.Y.

237, 39 N.E. 66 (1894), is curious, because that case is not materially distinguishable from King

or the instant case.  In Jacobie, the New York Court of Appeals held:

> It is undoubtedly the general rule that the only proper parties to an action of mortgage foreclosure are the mortgagee and mortgagor and those who have acquired rights under them subsequent to the mortgage. . . .  But where the complaint in the foreclosure action alleges the prior incumbrance, and prays for relief that the amount due thereon be ascertained, and that such amount be first paid out of the proceeds of the sale in foreclosure, and the judgment follows the prayer of the complaint, it has never been doubted in any case that the prior incumbrancer suffering default in such an action is concluded by the judgment therein. . . .
>
> If Mrs. Jacobie did not desire to have her rights, as prior mortgagee, adjudicated in the action brought by Guilford, she should have appeared and demurred or answered in that action, and thus have raised the question that she was not a proper party thereto, and had it adjudicated therein.  But having, by her default, consented that judgment comprehended within the prayer for relief might be rendered against her, she cannot attack that judgment collaterally, or successfully object that it does not conclude her as to everything therein contained and adjudicated.  If she omitted, by any inadvertence or excusable neglect, to answer or demur in that action, her only relief was by an application to the court to open her default and to permit her to come in and defend the action.

344 N.Y. at 239-40, 39 N.E. at 66.  Jacobie thus stands for the propositions that even a senior

lienholder can be joined in a foreclosure action to determine her rights, and if that senior

lienholder does not assert those rights, she is barred by *res judicata* from collaterally attacking

the foreclosure judgment later.

CDC seems to believe that the carve-out in the intercreditor agreement was so ironclad

that it need not have even been presented in court and could be held for a later surprise.  There is

no such contract recognized by law.  In addition, it is unclear what procedure CDC would have

used to assert its claim had the Debtor not filed for bankruptcy.  But it is clear that CDC cannot

use the bankruptcy case to circumvent the well-established New York law of *res judicata*.

## CONCLUSION

The Order of the bankruptcy court is REVERSED and the case is remanded for further proceedings consistent with this opinion.


**SO ORDERED.**


_____
U.S.D.J.


Dated: Brooklyn, New York
        January 29, 2021